# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| CYNTHIA FLEMING CHESNUT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 5:18-CV-404 (MTT) ) |
| COUNTRY FINANCIAL INSURANCE, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Plaintiff Cynthia Chesnut filed suit against Defendant CC Services, Inc.[1] ("CCS") alleging violations of the American with Disabilities Act and Fair Labor Standards Act. Doc. 24. CCS moved to dismiss her failure-to-accommodate claim because she did not exhaust her administrative remedies. Doc. 28. For the following reasons, that motion (Doc. 28) is **GRANTED**.

## I. BACKGROUND[2]

Beginning in 2013, Chesnut was employed by CCS as an Employee Financial Representative and reported to CCS Manager Michael Sehringer. Doc. 24 ¶¶ 5, 12, 13. In September 2015, Chesnut "was a witness to, and was within a close proximity of, her husband when he took his own life by gunfire (hereinafter, 'traumatic event')." *Id.* ¶ 18.

---

[1] Chesnut's amended complaint lists only CC Services, Inc. as a defendant. Doc. 24 ¶¶ 5-9. The Clerk's Office is **DIRECTED to terminate** the remaining Defendants.

[2] The allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Until that time, Chesnut's job performance was "exemplary." *Id.* ¶¶ 16, 41. "Within approximately two months of the traumatic event, Ms. Chesnut remained grief-stricken and emotionally raw, and it became clear to her that her performance was suffering as a result." *Id.* ¶ 23.

In November 2015, Chesnut met with Sehringer to discuss her job performance and request an accommodation. *Id.* ¶ 26. Sehringer refused to grant Chesnut an accommodation. *Id.* ¶ 27. Chesnut then told Sehringer that she was going to meet with his supervisor, Tim Richardson, regarding possible accommodations and asked Sehringer to attend. *Id.* ¶¶ 28, 30. Sehringer "became angry" when Chesnut told him she contacted Richardson, but he ultimately met with them. *Id.* ¶¶ 29, 30. After Richardson denied Chesnut's request for an accommodation, Chesnut contacted CCS Leave of Absence Administrator Janine Schiebel and requested short-term disability leave. Docs. 24 ¶¶ 32, 33; 24-1 at 3. Chesnut was granted this request. Doc. 24 ¶¶ 33, 34.

In Fall 2016, Chesnut was diagnosed with post-traumatic stress disorder, which caused her to have "distressing" flashbacks and nightmares; emotional numbness; avoidance of places, people, activities, and situations that remind her of the traumatic event; and difficulty sleeping and concentrating. *Id.* ¶¶ 37, 38. Chesnut's coworkers, including Sehringer, witnessed Chesnut experience emotional breakdowns "on several occasions." *Id.* ¶¶ 39, 40. New policies, procedures, and job requirements that were implemented after the traumatic event "exacerbated Ms. Chesnut's PTSD[,]" causing Chesnut to struggle to meet her job benchmarks *Id.* ¶¶ 42, 43. Chesnut asked Sehringer "on a number of occasions" to transfer her to another office that was smaller

and had a less stressful environment as an accommodation for her PTSD, but Sehringer denied these requests. *Id.* ¶¶ 44, 45. Throughout this time, Chesnut's pay was docked for failing to meet certain benchmarks, and she spent time working at home or after hours and was not paid overtime compensation. *Id.* ¶¶ 49, 50.

In November 2017, Chesnut was told that she would be terminated due to her poor job performance, but she was not given an exact date. *Id.* ¶¶ 47, 48. On November 20, Chesnut could not access her computer, "and she sent a text message inquiring as to the date of termination." *Id.* ¶ 48. Chesnut continued working until she received a response two days later stating that she had been terminated on November 20. *Id.*

In January 2018, Chesnut filed a charge of disability discrimination with the Equal Employment Opportunity Commission. Doc. 30-1. In the body of her charge, she alleged:

> I began my employment with the above-named employer as an Insurance Financial Representative on October 15, 2013. Management and Human Resources was informed of disabilities in December of 2015 and January of 2016. On November 15, 2017, I was informed of my discharge by my supervisor, Mike Sehringer.
>
> The reason given for my discharge was not meeting performance standards.
>
> I believe that I have been discriminated against because of my disabilities, in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

*Id.* After concluding its investigation, the EEOC provided Chesnut with a Notice of Rights on July 31. Doc. 24 ¶ 53.

On October 29, Chesnut, proceeding *pro se*, filed her complaint in this Court alleging failure to accommodate, hostile work environment, and disability discrimination.

Doc. 1. After retaining counsel, Chesnut amended her complaint, alleging (1) failure to accommodate; (2) disability discrimination; (3) failure to pay minimum wage; and (4) failure to pay overtime. Doc. 24 ¶¶ 54-89. Specifically, Chesnut alleges that her "performance would have greatly improved if she had been provided with an accommodation" and that her pay would not have been docked for failing to meet certain benchmarks. *Id.* ¶¶ 47, 49. CCS has moved to partially dismiss Chesnut's complaint—specifically, her failure-to-accommodate claim—for failing to exhaust her administrative remedies. Doc. 28.

## II. FAILURE TO EXHAUST STANDARD

Plaintiffs proceeding under the ADA must exhaust their administrative remedies by filing a charge with the EEOC before bringing their claims in federal court.[3] *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5); *see also Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892-93 (11th Cir. 2014) (applying the Title VII exhaustion requirement to an ADA claim). The defense of failure to exhaust non-judicial remedies raises a matter in abatement. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008).[4] As in the case of other matters in abatement, e.g. jurisdiction, venue, and service of process, a district court may—indeed, necessarily must—consider facts outside the pleadings and resolve factual disputes to determine

---

[3] "[The ADA's] charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019).

[4] While the relevant issue in *Bryant* was whether the plaintiff exhausted his administrative remedies under the Prison Litigation Reform Act, the Eleventh Circuit held in an unreported decision that there is no reason why *Bryant* should not apply to motions to dismiss under the ADA's exhaustion requirement. *See Tillery v. U.S. Dep't Homeland Sec.*, 402 F. App'x 421, 424-25 (11th Cir. 2010) (holding that the general exhaustion principles relied upon in *Bryant* also apply equally to Title VII exhaustion); *see also Duberry v. Postmaster Gen.*, 652 F. App'x 770, 772 (11th Cir. 2016) (applying *Bryant* to Title VII and ADA claims).

whether an exhaustion defense has merit "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.* at 1376 (citations omitted).

## III. DISCUSSION

CCS argues that the scope of Chesnut's EEOC charge did not encompass a failure-to-accommodate allegation. *See generally* Doc. 28. Chesnut argues that (1) the allegations in her EEOC charge are "reasonably related" to her failure-to-accommodate claim in her complaint; (2) the EEOC investigation should have uncovered CCS's failure to accommodate; and (3) the Court should read the allegations in her EEOC charge liberally because she was not represented by counsel at that time.[5] Doc. 30.

### A. Reasonably Related Allegations

Claims in a subsequent lawsuit are typically limited to the scope of the EEOC charge. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (affirming a denial of summary judgment where a new retaliation claim in the complaint was based on facts alleged in the EEOC charge) (citation omitted). While claims that

---

[5] Chesnut also argues that she "will testify that she informed the EEOC of Defendant's denial of her request for a reasonable accommodation" and "raised this issue during her initial meeting with the intake officer[] and . . . with [her] EEOC Investigator[.]" Doc. 30 at 7. But Chesnut cites no authority that the Court can consider alleged oral statements made to the EEOC or, for that matter, that the Court can consider anything other than the charge itself when determining whether EEOC administrative remedies have been exhausted. It is true that an intake questionnaire may, in "exceptional" circumstances, be taken as a charge for statute of limitations purposes. *See Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1241 (11th Cir. 2004); *Wilderson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001). Perhaps it can be said, by extension, that if an intake questionnaire can be considered a charge, a court could also consider that intake questionnaire to determine whether a plaintiff exhausted her administrative remedies. But here, just as in the charge, nothing in the intake questionnaire suggests CCS denied a request to accommodate Chesnut's disability. Doc. 31-1 at 20-24. On the contrary, the intake questionnaire reflects that Chesnut only reported that she "was terminated from [her] position . . . because I did not Complex Grief disorder and PTSD [sic]," and in response to the question "[p]lease tell us any other information about your experience[,]" Chesnut answered, "N/A." *Id.* at 24. Indeed, nothing in the EEOC's file remotely references a failure to accommodate. *See generally* Docs. 31-1; 31-2; 31-3; 31-4; 31-5; 31-6. (CCS filed, without objection by Chesnut, a copy of the EEOC's file.)

"amplify, clarify, or more clearly focus the allegations in the EEOC complaint" are allowed in a subsequent lawsuit, "allegations of new acts of discrimination are inappropriate." *Id.* at 1279-80 (internal quotation marks and citation omitted).

However, "the scope of an EEOC complaint should not be strictly interpreted," and courts should be "extremely reluctant to allow procedural technicalities to bar claims brought under [the ADA]." *Gregory*, 355 F.3d at 1280 (internal quotation marks and citation omitted). "As long as allegations in the judicial complaint are 'reasonably related' to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them." *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980).[6]

Chesnut does not argue that she alleged CCS failed to accommodate her in her EEOC charge. *See generally* Doc. 30. Rather, she argues that her failure-to-accommodate claim "reasonably relates" to the claims in the charge. *Id.* at 7-13. The Court is not convinced. The Eleventh Circuit's unreported decision in *Booth v. City of Roswell*, 754 F. App'x 834 (11th Cir. 2018), is instructive. Like Chesnut, Booth alleged in his complaint that he asked his employer for a reasonable accommodation for his disability, and his employer refused. 754 F. App'x 834, 837 (11th Cir. 2018). The complaint also alleged that Booth "received verbal and written counseling and he was placed on a 90-day performance improvement plan" due to his poor work performance. *Id.* However, in his EEOC charge, Booth only stated that he was terminated six months after he requested an accommodation and that he was terminated because of his

---

[6] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

disability; he never mentioned an accommodation request in his charge. *Id.* The Eleventh Circuit held that Booth's failure-to-accommodate claim in his complaint described a new act of discrimination that was not alleged in or reasonably related to the discrimination alleged in his EEOC charge, and Booth thus failed to exhaust his administrative remedies for his failure-to-accommodate claim. *See id.* (citing *Ray*, 626 F.2d at 443 (holding that claims were properly dismissed for failure to exhaust because they were not "reasonably related" to the EEO charge)).

Like *Booth*, Chesnut's failure-to-accommodate claim in her complaint alleges a new act of discrimination that does not reasonably relate to the allegations in her EEOC charge. *Compare* 754 F. App'x at 837 *with* Docs. 24; 30-1. In her EEOC charge, Chesnut only mentions her termination that occurred nearly two years after she first notified CCS of her disability, that CCS told her she was being discharged for failing to meet performance standards, and that CCS, when it terminated her, discriminated against her because of her disability. Doc. 30-1. Nowhere in the charge does she mention what her disability is or whether she asked CCS to accommodate her in any way. *See generally* Docs. 24; 30-1. Accordingly, Chesnut's allegations in her EEOC charge are not reasonably related to her failure-to-accommodate claim in her complaint.

### B. EEOC Investigation

The purpose of the ADA filing requirement is to notify the employer that a discrimination charge has been lodged with the EEOC and to allow the EEOC to investigate the complaint. *Pijnenburg v. W. Ga. Health Sys., Inc.*, 255 F.3d 1304, 1306 (11th Cir. 2001). Chesnut argues that a reasonable EEOC investigator should have concluded that Chesnut was complaining of CCS's failure to accommodate and that the

EEOC's investigation would have reasonably uncovered any evidence of a failure to accommodate. Doc. 30 at 7-13. Chesnut relies on *Gregory*, where the Eleventh Circuit held that based on the facts alleged in her EEOC charge, "a reasonable EEOC investigator could have concluded that what [Gregory] had complained about is retaliation," even though she did not check the retaliation box on her EEOC charge. 355 F.3d at 1280.

However, neither the facts Chesnut alleges in her EEOC charge nor anything in the EEOC's file suggest in any way that Chesnut requested an accommodation for her disability. Docs. 31-1; 31-2; 31-3; 31-4; 31-5; 31-6. Reasonably and understandably, the EEOC interpreted Chesnut's charge as an allegation that Chesnut had been terminated because of her disability, and that is the allegation the employer addressed in its position statement. Doc. 31-1 at 3, 8-13. The facts alleged in the EEOC charge in *Gregory*, on the other hand, made clear that her termination was "inextricably linked" to her request for an accommodation. It cannot be said that Chesnut's allegation in her charge that she was terminated because of her disability is inextricably linked to some unmentioned earlier request for an accommodation. Even allowing Chesnut the most liberal interpretation of her charge, the Court can see no link between her allegation that she was terminated because of a disability and her new claim that CCS had earlier refused her request for an accommodation of her disability. In short, there was no reason for the EEOC to suspect that Chesnut had requested an accommodation for her disability, much less that CCS failed to accommodate such a request. *See generally* Doc. 31-1.

### C. Filing a Charge *Pro Se*

Finally, Chesnut argues that the Court should liberally construe her EEOC charge because it was prepared without the assistance of counsel. Doc. 30 at 7-8. "It cannot be doubted that a large number of the charges filed with (the) EEOC are filed by ordinary people unschooled in the technicalities of the law. This fact can only point us in the direction of liberal procedural rules." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) (internal quotation marks and citation omitted). But, once again, even the most liberal reading of her charge reveals nothing suggesting a failure-to-accommodate claim.

## IV. CONCLUSION

For the reasons set forth above, CCS's motion to partially dismiss (Doc. 28) is **GRANTED**. Chesnut's failure-to-accommodate claim is **DISMISSED with prejudice**, and her remaining claims may proceed.

**SO ORDERED**, this 12th day of September, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
