# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| CYNTHIA FLEMING CHESNUT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:18-CV-404 (MTT) |
| | ) |
| COUNTRY FINANCIAL INSURANCE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Cynthia Chesnut has moved the Court to reconsider its order granting Defendant CC Services, Inc.'s motion to dismiss her failure-to-accommodate claim because she did not exhaust her administrative remedies (Doc. 28). Doc. 47. For the following reasons, that motion (Doc. 47) is **DENIED**.

## I. BACKGROUND

In January 2018, Chesnut filed a charge of disability discrimination against her employer, CC Services, Inc. ("CCS"), with the Equal Employment Opportunity Commission. Doc. 30-1. In the body of her charge, she alleged:

> I began my employment with the above-named employer as an Insurance Financial Representative on October 15, 2013. Management and Human Resources was informed of disabilities in December of 2015 and January of 2016. On November 15, 2017, I was informed of my discharge by my supervisor, Mike Sehringer.
>
> The reason given for my discharge was not meeting performance standards.

> I believe that I have been discriminated against because of my disabilities, in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

*Id.* After concluding its investigation, the EEOC provided Chesnut with a Notice of Rights on July 31. Doc. 24 ¶ 53. Chesnut then alleged in her amended complaint that CCS (1) failed to accommodate her disability in violation of the Americans with Disabilities Act; (2) terminated her because of her disability in violation of the ADA; (3) failed to pay her minimum wage; and (4) failed to pay overtime. Doc. 24 ¶¶ 54-89. CCS moved to dismiss Chesnut's failure-to-accommodate claim for failing to exhaust her administrative remedies with the EEOC because she did not bring that allegation in her charge. Doc. 28. The Court granted that motion. Doc. 45.

## II. MOTION FOR RECONSIDERATION STANDARD

Pursuant to Local Rule 7.6, "Motions for Reconsideration shall not be filed as a matter of routine practice." M.D. Ga. L.R. 7.6. "Reconsideration is appropriate only if the movant demonstrates (1) that there has been an intervening change in the law, (2) that new evidence has been discovered which was not previously available to the parties in the exercise of due diligence, or (3) that the court made a clear error of law." *Bingham v. Nelson*, 2010 WL 339806, at *1 (M.D. Ga. 2010) (internal quotation marks and citation omitted). "In order to demonstrate clear error, the party moving for reconsideration must do more than simply restate his prior arguments, and any arguments which the party inadvertently failed to raise earlier are deemed waived." *McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1223 (M.D. Ga. 1997).

## III.  DISCUSSION

Chesnut has moved the Court to reconsider its order granting CCS's motion to dismiss her failure-to-accommodate claim based on clear error.  Chesnut argues that (1) because CCS knew about her disability and terminated her before "considering making a reasonable accommodation," CCS discriminated against her; (2) her EEOC charge encompasses a failure-to-accommodate allegation; and (3) a reasonable EEOC investigator should have inquired whether CCS failed to accommodate her disability.  *See generally* Doc. 47.

### A.  Duty to Make a Reasonable Accommodation

Chesnut's first argument that CCS violated the ADA by not preemptively offering an accommodation—an argument which she relies on throughout her entire motion—is patently without merit.  An employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).  Simply telling an employer that an employee has a disability, as Chesnut did here, does not trigger that duty.  29 C.F.R. Pt. 1630, App. ("If an employee with a known disability is having difficulty performing his or her job, an employer *may* inquire whether the employee is in need of a reasonable accommodation.  In general, however, *it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed*.  When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation." (emphasis added)).

### B. Scope of the EEOC Charge

Chesnut argues that because she informed CCS of her disability, then the Court should find that she alleged in her EEOC charge that CCS failed to accommodate her disability. She specifically stated that "[w]ithout making any inferences, the Court should find that the EEOC Charge alleges that Ms. Chesnut's November 15, 2017 termination is the action that she alleged was discrimination in violation of the ADA." Doc. 47 at 3. That is exactly what the Court did in its previous order. *See* Doc. 45. Chesnut appears confused at this stage of the litigation[1] that a claim for an unlawful termination due to an employee's disability is different than a claim for a failure to accommodate a disability. As stated in the Court's previous order, nowhere in her charge does Chesnut mention what her disability is or whether she asked CCS to accommodate her in any way; she merely states that she told CCS about her disability and that she was terminated because of her disability. Docs. 30-1; 45 at 7. Again, the only claim raised in her EEOC charge was termination based on her disability—not a failure to accommodate—and a claim for unlawful termination does not automatically encompass a failure-to-accommodate claim.

### C. EEOC Investigation

Chesnut, again, argues that "a reasonable EEOC investigator should have known to investigate the issue of a reasonable accommodation." Doc. 47 at 5. Other than citing a non-binding Eastern District of Tennessee order from 2014[2] that was not in

---

[1] Although Chesnut fails to understand this now, she did understand the difference between the two claims when she filed her first amended complaint. She listed Count I as "FAILURE TO PROVIDE REASONABLE ACCOMMODATION" and Count II as "DISCRIMINATION," which alleged unlawful termination based on her disability. Doc. 24 ¶¶ 54-74.

[2] In another part of her motion, Chesnut argues that the Court should not rely on an unpublished Eleventh Circuit opinion because Rule 36-2 of the Eleventh Circuit states that unpublished opinions "should not be

-4-

her response or surreply, Chesnut raised an identical argument in her previous filings.[3] Docs. 30 at 11-13; 34 at 6-8. The Court is not convinced to reconsider its order based on this new citation.

## IV. CONCLUSION

For the reasons set forth above, Chesnut's motion for reconsideration (Doc. 47) is **DENIED**.

**SO ORDERED**, this 25th day of September, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

used as binding authority." Doc. 47 at 4. It is unclear why Chesnut wants the Court to follow one persuasive decision but not follow another.

[3] For reasons not known, Chesnut, in this section of her brief also makes arguments that were inapplicable to the Court's analysis in the part of its order stating that an EEOC investigator was not required to investigate her failure-to-accommodate claim. First, Chesnut argues that she "was under no obligation to make [a request for an accommodation], and her requests for accommodation do not give rise to her claim for this discrimination," meaning her failure-to-accommodate claim. *Id.* As previously discussed, that argument is patently without merit. Chesnut then argues that the Court's reliance on *Booth v. City of Roswell*, 754 Fed. App'x 834 (11th Cir. 2018), was an error because the Eleventh Circuit applied a plain error standard of review. *Id.* However, the Eleventh Circuit relied on binding opinions that applied a *de novo* standard of review to hold that Booth did not allege a failure to accommodate in his charge. *Booth v. City of Roswell*, 754 Fed. App'x 834, 836-37 (11th Cir. 2018) (citing *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989); *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980)). Chesnut also distinguishes her charge from Booth's because (1) Booth's charge "identified a nearly two month period as that which the discrimination allegedly occurred, not solely the day of his termination," while Chesnut "identified only the date of her termination as the discriminatory act;" and (2) Booth's charge "did not state that he was terminated because of his disability," while she alleged that CCS was aware of her disability. Doc. 47 at 4 (citing *Booth*, 754 Fed. App'x at 837; Doc. 47-2) (emphasis in original). It is unclear what point Chesnut is attempting to make with her first comparison between the two charges. Her second comparison, however, is the same argument she has been making throughout this motion: An employee is not required to request an accommodation under any circumstance once the employer is made aware of the disability. Once again, an employer's duty to provide a reasonable accommodation is not triggered by the employee simply telling her employer that she has a disability. *See* 29 C.F.R. Pt. 1630, App.